Wood, C. J.
The first assignment of error goes to the sufficiency of the indictment. It ,is not contended that any alteration was made in it by the prosecutor, after it was returned into court by the grand jury. The fact we suppose to be, that in looking over the form of the indictment, before the same was submitted *465, 466 to the grand jury, the pleader added the letter “s” to the word promise, to avoid all question of variance, when the note should be offered in evidence, as the word in the note is promises. The question, then, is, does this letter “5” in pencil marks, vitiate the indictment? No encouragement should *be given, it is true, to a departure from well-established forms in criminal jfieading, but it is the substance of the form, and not its shadow, to which it is important to adhere. The court might not feel disposed to tolerate the practice of drawing an entire indictment with a lead pencil, because it is more liable to be effaced and obliterated-than if drawn with ink; but there is no statute in Ohio, nor any rule of common law, nor any principle of ordinary sense, that will avoid an indictment merely because one letter in the whole indictment is added to some one word in pencil, and that letter making no difference, neither in sound, sense, nor effect, in the word to which it is joined. An indictment is usually written, but it may be printed; and is, nevertheless, valid. It is commonly drawn with black ink ; but if written in red, blue, or yellow, who is bold enough to say that it is such a departure from usage that it vitiates the indictment? Wo apprehend no one. Why, then, should a single letter, in a legible pencil mark, have such an effect?
The second assignment is founded on the supposition that there is a repugnancy in the record fatal to the judgment of the court of common pleas. In the caption, it is stated the court of common pleas was begun and holden on November 3, 1845; and, in the indictment, it is averred the offense was committed on the 5th of the same month ; and as the record does not expressly aver the continuance of the court from day to day, from the 3d to the 5th day of November, it is insisted that the record shows the finding of the indictment before the offense was committed. If. this bo so, there is a repugnancy not to be overcome. It is, however, a rule of law, that the whole term of a court of record is to be considered as but one day, except in special cases, and for the purposes of justice, particular days of the term will be regarded; but never, when it will work injury or effect wrong.
But the record taken altogether, shows no apparent inconsistency. The caption is in these words, so far as it is material: “At a term of said court, begun and held at the court-house, *in the town of Bavenna,” etc., “on November 3, 1845.” Then follow the proceedings before a justice of the peace, copied into the *467 record, which, among other things, shows a warrant issued fcr the plaintiff by said justice, the return of the constable, that ha had the plaintiff in custody, and an order of the justice, made on the 6th day of November, that the plaintiff be retained in custody until disposed of by the grand jury of said county, then in session. The record then proceeds thus: “Afterward, at the same term aforesaid, the jurors of the grand jury,” etc., “returned into court their bill of indictment against Michael May.” The record therefore shows, with absolute certainty, that.the indictment was found after the offense was committed, when the whole is taken together, and no continuance of the court from day to day need appear in the record; because the whole term is, in law, but one day, and it does appear that the term continued until after the indictment was returned into court.
The third assignment of error is the admission of the note in evidence. It is supposed there is a fatal variance between the note described in the indictment and the one offered to the jury-in support of it. The note is set out in hme verba, which binds the pleader to a literal copy, according to the older authorities; but the rule of late has been much relaxed. This assignment may, however, be considered as substantially disposed of, by what has already been said in relation to the first assignment. With jthe letter “s” in pencil marks, there is no variance, if that letter is held to form part of the indictment; and we incline to the opinion that it does. But if not, the sound and sense are, in substance, still the same. Indeed, the grammatical construction of the sentence is the same. Bank is a collective noun; its verb may be singular -or plural; promise or promises, is all the same in substance, sense, and sound; and the note is sufficiently, in our opinion, described, to go in evidence to the jury. Stevens v. Stebbins, 3 Scam. 26; Quigley v. The People, 2 Scam. 302.
The fourth assignment is based upon the supposed error of the court in admitting the note to go in evidence, when it ^varied from the one described in this, that the word “the” is upon the note offered, thus, The Lafayette Bank of Cincinnati; and in the one described it is omitted, thus, Lafayette Bank of Cincinnati. Rules of evidence are the same in civil and in criminal proceedings ; and, at the present day, courts are not confined to the rigid rule of idem sonans; but the inquiry is, whether the variance be material or immaterial; and it can not, with any propriety, be in *468 sisted that the word the either adds to or detracts from the force,, effect, or validity of the notes of the bank, or its obligation to redeem them.
As to the fifth assignment, it can by no means be sustained. The law permits experts to be called to testify to the genuineness-of handwriting, though they have never seen the person write. Indeed, any person who has been accustomed to see, receive, and pay out bank paper may be called to prove its character, though his knowledge is entirely derived from his observation of the-paper only, and its currency in the community, and he may never have seen the officers of the bank who signed the bill write, nor know, personally, that the bank ever redeemed one of the bills he has seen in circulation. Cowen and Hill’s notes to 3 Phil. Ev. 1334-1337.
The sixth assignment is not tenable. The evidence given was such as to lead to the impression that the plaintiff and his comrade perfectly understood each other, and were engaged in a common criminal enterprise, and that the act of the one was the act of both. It was, therefore, competent for the prosecutor to put any inquiry that would show the part taken by either in the passing or the redemption of the bill, to establish the plaintiff’s-guilt, to ascertain where the bill was, and its identity. The evidence would have been competent, if the bill had passed into the hands of a perfect-stranger, in order to trace it to the hands of the prosecutor, and identify it on the trial as the note uttered and published by the plaintiff.
The seventh assignment is, that the court permitted the question to be put “ whether said bill was genuine, the bill not being produced nor traced to the possession of the prisoner.” *On this assignment, it is sufficient to say that the bill of exceptions does not show that any answer was given to the inquiry. Whether legal or illegal, therefore, we are left entirely in the dark whether the answer was such as probably to influence the jury either against or in favor of the prisoner. This witness may have testified, from anything that appears, that the notice was genuine, and other testimony not set forth may have convicted the pi'isoner.
We may, therefore, dismiss the case with the application of that most appropriate maxim, lex non curat de minimis, and by affirming the judgment. Judgment affirmed.